**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52683-2-II |
| Respondent, | |
| v. | |
| ALLISON CHANTAL POOR, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Allison C. Poor appeals her convictions for failing to summon assistance, first degree trafficking in stolen property, and possession of a controlled substance, methamphetamine. Poor argues that (1) the State presented insufficient evidence to prove the crime of failing to summon assistance, (2) the statute criminalizing failure to summon assistance is unconstitutionally vague, (3) the State presented insufficient evidence to prove the crime of trafficking in stolen property, (4) she was deprived of her right of a unanimous jury verdict for her possession of a controlled substance charge, (5) interpreting the crime of possession of a controlled substance as a strict liability offense violated her right to due process, and (6) the amended information was constitutionally deficient. Poor makes additional challenges in her statement of additional grounds (SAG).

The State concedes that insufficient evidence supports Poor's conviction for failing to summon assistance, and we accept the State's concession. Because we resolve this issue on insufficiency grounds, we need not decide whether the statute criminalizing failure to summon

assistance is unconstitutionally vague. We further hold that sufficient evidence supports Poor's conviction for trafficking in stolen property, Poor was deprived of her right of a unanimous jury verdict for her possession of a controlled substance charge, her conviction for possession of a controlled substance did not violate her due process rights because possession of a controlled substance remains a strict liability offense, and the amended information was constitutionally sufficient. Last, we decline to address the issues in Poor's SAG.

Accordingly, we reverse the failing to summon assistance conviction and remand for dismissal with prejudice, affirm the trafficking in stolen property conviction, and reverse the possession of a controlled substance conviction and remand for a new trial.

FACTS

On the evening of July 8, 2016, Ronald Hoague hosted a gathering with four other adults at his home. One of the party guests, Leann Martin, was living at Hoague's home at the time of the gathering. Martin's friend, Allison Poor, also attended the gathering and claimed to have been a caregiver who lived there. Nigel Norwood and Brandon Ramey were also present. All guests stayed the night.

The group used methamphetamine throughout the evening and shared the drugs by smoking the drugs through a pipe and passing the pipe around. It is likely Poor and Hoague also used methamphetamine in a different form by using a spoon to heat the drug and a needle to inject the drug. Ramey stated that he never saw Poor and Hoague inject the methamphetamine but observed them prepare to inject. Ramey said that as far as he was aware, the drugs that the group used were Poor's.

Norwood and Ramey left the next morning. Before leaving, Norwood did not observe Hoague, but overheard Ramey and Poor talking about Hoague. At first, Hoague was unresponsive to Poor's attempts to wake him, but he eventually "was able to respond to touch through grunts" as the morning went on. 3 Verbatim Report of Proceedings (VRP) at 293. After leaving the home, Norwood told Ramey that he thought they should call the paramedics for Hoague because he was not waking up. Ramey assured Norwood that Hoague was okay. Neither person called the paramedics.

Later that day, Hoague's neighbor, Krista Heiskell, stopped by his home. Heiskell checked in with Hoague regularly. When she arrived, Poor and a couple other people were inside the home. Later in the day, Heiskell went back to Hoague's home to drop off an item from the grocery store. Heiskell did not enter, but noticed that two or three other people were inside the home when Poor opened the door. Heiskell noticed one person attempt to conceal a pipe and a torch in the middle of the living room floor. Poor told Heiskell that Hoague was sleeping and closed the door.

Heiskell came back to Hoague's home again around 5:00 p.m. Poor asked Heiskell to try and wake Hoague because Poor had not been able to wake him that day. Poor was unsure whether she should call 911. Poor was aware that Hoague was a diabetic, and she had checked Hoague's blood sugar about an hour before and it was at a 12.

After Heiskell observed Hoague, she instructed Poor to call 911. Poor told the 911 operator that she believed Hoague was in a diabetic coma. When the paramedics arrived a few minutes later, Heiskell also told them that she believed Hoague was "in a diabetic coma" and that his insulin level was low. 2 VRP at 238. The paramedics transported Hoague to the hospital.

Both Martin and Poor remained in the home. Sometime soon after Hoague went to the hospital, Hoague's adult son went to Hoague's residence "to get people out of his home." *Id.* at 209. Martin agreed to leave, but Poor stated she would not leave because she was Hoague's caregiver and she had permission from Hoague to live in his home. Police officers told Hoague's son that he needed to leave the residence.

Heiskell returned to Hoague's home a few hours after Hoague was transported to the hospital. Heiskell told Poor that she should leave. Poor again refused to leave, stating Hoague gave her permission to live there. While looking for Hoague's keys, Heiskell found "a meth pipe full of meth" in Hoague's kitchen drawer. *Id.* at 241. Poor told Heiskell that if she called the police, Poor would tell the police that it was Heiskell's pipe. Heiskell called the police. At that time, Hoague's son and Heiskell's wife were in the doorway of the residence.

Hoague died on July 14, 2016, after five days in the hospital. Hoague was 67 years old. The medical examiner determined that Hoague died of "acute methamphetamine intoxication." 3 VRP at 334. The medical examiner stated that the drug levels found in Hoague's system when he died would have caused the death of a person. The medical examiner also noted that other factors that contributed to Hoague's death were chronic obstructive pulmonary disease and hypertensive cardiovascular disease. Hoague's medical records also indicated that he was diabetic, but the medical examiner was unsure how severe his diabetes was or whether it was well managed.

After Hoague's death, his family returned to his home to clean out his belongings. On July 18, Hoague's son discovered a spoon with methamphetamine on it in the kitchen area above the stove. On July 21, Hoague's daughter found a bag of methamphetamine inside of a fanny pack on the kitchen counter.

4

On July 21, the family reported that Hoague's electric guitar was missing. The guitar had been there when Hoague's son first went to the house on July 9, the day that Hoague was transported to the hospital. Hoague was a musician, and his instruments were very important to him. Hoague had been homeless several times during his life, and "one thing that he never got rid of was any of his musical instruments." 4 VRP at 365. Once when Hoague was being evicted, he asked his daughter to store his instruments for him to keep them safe. Although all of Hoague's musical instruments were important to him, Hoague was particularly sentimental about his guitar because it was gifted to him by a friend. Hoague's family reported the guitar missing. Police checked a pawn shop database and discovered that Poor had pawned the guitar on September 9, 2016.

Hoague's daughter managed Hoague's financial matters after his death. She stated that Hoague received a monthly income and was meticulous about his receipts and careful about his finances. When Hoague died, he had money in his bank account and was not behind on any of his bills. Hoague's daughter also received a refund because Hoague had prepaid on an account.

The State charged Poor by amended information with failing to summon assistance, first degree trafficking in stolen property, and possession of a controlled substance, methamphetamine. With regard to the first degree trafficking in stolen property charge, the document stated the following:

> On or about September 9, 2016, in the County of Kitsap, State of Washington, the above named Defendant did, knowingly initiate, organize, plan, finance, direct, manage or supervise the theft of stolen property for sale to others, or did knowingly traffic in stolen property; contrary to the Revised Code of Washington 9A.82.050(1).

Clerk's Papers (CP) at 7.

Poor's case proceeded to a jury trial, where the State introduced the evidence outlined above. With regard to the charge of failing to summon assistance,[1] the State argued that because Poor was present when methamphetamine was given to Hoague, she was present when the crime of controlled substance homicide[2] was committed against Hoague. With regard to the charge of possession of a controlled substance, the State argued that Poor constructively possessed (1) the pipe containing methamphetamine found on July 9, (2) the spoon with methamphetamine on it found on July 18, and (3) the fanny pack with methamphetamine inside found on July 21. The State asserted to the jury that it could draw a "reasonable inference" that all three stashes were in the home on July 9, when Hoague went to the hospital and when Poor had "constructive

---

[1] The crime of failing to summon assistance is defined as:

> (1) [The defendant] was present when a crime was committed against another person; and
>
> (2) [The defendant] knows that the other person has suffered substantial bodily harm as a result of the crime committed against the other person and that the other person is in need of assistance; and
>
> (3) [The defendant] could reasonably summon assistance for the person in need without danger to himself or herself and without interference with an important duty owed to a third party; and
>
> (4) [The defendant] fails to summon assistance for the person in need; and
>
> (5) Another person is not summoning or has not summoned assistance for the person in need of such assistance.

RCW 9A.36.160.

[2] The crime of controlled substance homicide is defined as "[a] person who unlawfully delivers a controlled substance in violation of RCW 69.50.401(2)(a), (b), or (c) which controlled substance is subsequently used by the person to whom it was delivered, resulting in the death of the user." RCW 69.50.415.

possession" over the home. 4 VRP at 439-40. The State also argued that the inference was reasonable because Norwood and Ramey stated that the items were being used on July 8 and July 9. The jury convicted Poor of all three counts.

Poor appeals.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Poor argues that her convictions for failing to summon assistance and trafficking in stolen property are not supported by sufficient evidence. The State concedes that Poor's conviction for failing to summon assistance is not supported by sufficient evidence but argues that sufficient evidence supports Poor's conviction for trafficking in stolen property. We accept the State's concession and conclude that the State presented insufficient evidence to prove Poor committed the crime of failing to summon assistance. However, we conclude that sufficient evidence supports Poor's conviction for trafficking in stolen property.

A. LEGAL PRINCIPLES

We review sufficiency of evidence claims for whether, viewing the evidence in the light most favorable to the State, "'any rational trier of fact could have found guilt beyond a reasonable doubt.'" *State v. Frahm*, 193 Wn.2d 590, 595, 444 P.3d 595 (2019) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). A sufficiency of the evidence challenge admits the truth of the State's evidence and all reasonable inferences drawn therefrom. *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017). "[I]nferences based on circumstantial evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013). A

reviewing court defers to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007). We review a challenge to the sufficiency of the evidence de novo. *Frahm*, 193 Wn.2d at 595.

B. FAILING TO SUMMON ASSISTANCE

Poor argues that her conviction for failing to summon assistance rests on insufficient evidence because, inter alia, the State did not prove that she was present when a crime was committed against Hoague or that she knew Hoague suffered substantial bodily harm as a result of a crime committed against him. The State concedes this error. We agree and accept the State's concession.

It has long been recognized in criminal law that an omission or inaction of a person could, in some situations, reach the level of criminal liability. Melody J. Stewart, *How Making the Failure to Assist Illegal Fails to Assist: An Observation of Expanding Criminal Omission Liability*, 25 AM. J. CRIM. L. 385, 387 (1998). In 2005, the Washington legislature enacted a law criminalizing one's failure to summon assistance. LAWS OF 2005, ch. 209, § 1. Therefore, it legally compels third parties to render aid to a crime victim. The crime of failing to summon assistance is defined as follows:

> (1) [The defendant] was present when a crime was committed against another person; and
>
> (2) [The defendant] knows that the other person has suffered substantial bodily harm as a result of the crime committed against the other person and that the other person is in need of assistance; and
>
> (3) [The defendant] could reasonably summon assistance for the person in need without danger to himself or herself and without interference with an important duty owed to a third party; and

> (4) [The defendant] fails to summon assistance for the person in need; and
>
> (5) Another person is not summoning or has not summoned assistance for the person in need of such assistance.

RCW 9A.36.160.[3]

The State's failure to prove an essential element of the crime beyond a reasonable doubt requires reversal. *State v. DeVries*, 149 Wn.2d 842, 853, 72 P.3d 748 (2003). Therefore, we address only the elements that the State properly concedes are not supported by sufficient evidence.

*1. PRESENT WHEN A CRIME WAS COMMITTED AGAINST ANOTHER PERSON*

In order to prove the first element of failing to summon assistance, the State was required to prove that Poor was present when a crime was committed against Hoague. RCW 9A.36.160(1). At trial, the State argued that Poor was present when the crime of controlled substance homicide was committed against Hoague. A person commits the crime of controlled substance homicide when (a) a person unlawfully delivers a controlled substance, (b) the person accepting the delivery uses the controlled substance, and (c) the use of the controlled substance results in death. RCW 69.50.415(1); *State v. Bernal*, 109 Wn. App. 150, 153, 33 P.3d 1106 (2001).

Poor contends that the State did not prove that she was present when the methamphetamine used at the party was delivered because the State did not present any evidence regarding the source of the methamphetamine. The State concedes there is insufficient evidence to support this element. We accept the State's concession.

---

[3] The crime of failing to summon assistance appears to be rarely enforced. Since its enactment in 2005, no appellate court has analyzed application of the statute.

The only evidence adduced at trial about the source of the methamphetamine that Hoague consumed on the night of the gathering came from Ramey. When asked whose drugs were being consumed at the gathering, Ramey replied "[a]*s far as I'm aware of*, they were [Poor's]." 3 VRP at 315 (emphasis added). This evidence is equivocal at best. Ramey was not asked about the basis of his belief that the drugs were provided by Poor, and no other witness testified that the drugs came from Poor. Even when viewing this testimony in the light most favorable to the State, on this record, a rational trier of fact could not have found beyond a reasonable doubt that Poor either unlawfully delivered the drugs to Hoague or that she was present when another person unlawfully delivered the drugs to Hoague, an essential element of controlled substance homicide. RCW 69.50.415(1); *Bernal*, 109 Wn. App. at 153-54. Absent such evidence, the State failed to prove that the crime of controlled substance abuse homicide was committed against Hoague, or that Poor was present when that crime was committed.

Therefore, the State did not produce sufficient evidence to support a finding that Poor was present when a crime was committed against Hoague, the first element of failing to summon assistance.

*2. SUBSTANTIAL BODILY HARM AS A RESULT OF A CRIME*

Poor next argues that the State failed to present sufficient evidence to show that Poor knew Hoague suffered substantial bodily harm as a result of a crime and was in need of assistance. The State again concedes that the evidence is insufficient to support this element. We agree and accept the State's concession.

To prove failure to summon assistance, the State must show that the defendant "knows that the other person has suffered substantial bodily harm as a result of the crime committed against

the other person and that the other person is in need of assistance." RCW 9A.36.160(2). "'Substantial bodily harm'" is defined as "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." RCW 9A.04.110(4)(b). The parties agree that the relevant language at issue here is whether Poor knew that as a result of ingesting methamphetamine, Hoague suffered "a temporary but substantial loss or impairment of the function of any bodily part or organ." *Id.*

Here, the evidence presented at trial shows that on July 8, all five adults were up late into the evening using drugs. Early the next morning, Hoague was unresponsive to attempts to wake him, but became somewhat responsive as the morning went on.

At trial, there was no testimony that Poor or anyone else in the home who observed Hoague that morning believed Hoague was in need of medical attention. Although Norwood suggested to Ramey that the paramedics should be called that morning, Norwood never observed Hoague. Ramey, who saw Hoague that morning, assured Norwood that Hoague was fine. And, Martin, who was at Hoague's home that morning and throughout the day, did not call for help. This evidence suggests that it was not readily apparent to anyone in the home that Hoague was suffering "a temporary but substantial loss or impairment of the function of any bodily part or organ" throughout the day on July 9. RCW 9A.04.110(4)(b).

Moreover, even if Poor knew Hoague was suffering substantial bodily harm, the evidence is insufficient to show that Poor knew the bodily harm was a result of a crime committed against him. Poor was aware that Hoague was a diabetic and checked his blood sugar that afternoon. Poor told Heiskell that she could not wake Hoague. When Poor called 911, she told the operator that

she believed Hoague was in a diabetic coma. When the paramedics arrived, Heiskell likewise told the paramedics that she believed Hoague was "in a diabetic coma" and his insulin level was low. 2 VRP at 238.

When viewed in the light most favorable to the State, the evidence recited above is not evidence from which a rational trier of fact could infer that Poor knew that Hoague suffered substantial bodily harm as a result of a crime committed against him. Without evidence that Poor had knowledge of Hoague's substantial bodily harm as a result of a crime committed against him, the State could not satisfy the second element of the crime of failing to summon assistance. RCW 9A.36.160(2).

Therefore, we conclude insufficient evidence supports Poor's conviction for failing to summon assistance.[4]

## C. TRAFFICKING IN STOLEN PROPERTY

Poor argues that her conviction for trafficking in stolen property is not supported by sufficient evidence because the State did not introduce any evidence that Poor stole the guitar. We disagree.

A person commits trafficking in stolen property in the first degree when a person "knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or who knowingly traffics in stolen property." RCW 9A.82.050(1). To prove that Poor trafficked stolen property, the State was required to prove that she knew the

---

[4] Poor also argues that RCW 9A.36.160, the statute that criminalizes failing to summon assistance, is unconstitutionally vague. However, because the State properly concedes that Poor's conviction of this crime rests on insufficient evidence, necessitating reversal of this conviction and dismissal of the charge, we need not consider this issue.

property she pawned was stolen. *State v. Killingsworth*, 166 Wn. App. 283, 287, 269 P.3d 1064 (2012).

By statute, "'theft'" is defined as to "wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services." RCW 9A.56.020(1). To "'wrongfully obtain[]'" means to "take the property or services of another." Former RCW 9A.56.010(22)(a) (2011). "'Traffic' means to sell, transfer, distribute, dispense, or otherwise dispose of stolen property to another person, or to buy, receive, possess, or obtain control of stolen property, with intent to sell, transfer, distribute, dispense, or otherwise dispose of the property to another person." RCW 9A.82.010(19). A person acts "knowingly" when the person is aware of facts, circumstances, or results described by a statute defining an offense, or the person has information that would lead a reasonable person in the same situation to believe that facts exist which are described by a statute defining an offense. RCW 9A.08.010(1)(b).

Here, the State presented evidence that Hoague owned the guitar, and the guitar was at Hoague's home on the day he went to the hospital. Poor had access to the guitar because she stayed in Hoague's home when he was in the hospital. After Hoague's death, his family discovered that his guitar was missing from his home. Two months later, Poor sold the guitar at a pawn shop.

Poor argues that the elements of the crime are not satisfied here because the State did not present any evidence that anyone stole the guitar from Hoague. Thus, she claims, the State did not prove that the guitar was stolen. However, when challenging a conviction on the basis of insufficient evidence, direct and circumstantial evidence carry the same weight. *State v. Varga*,

151 Wn.2d 179, 201, 86 P.3d 139 (2004). We conclude that the State introduced sufficient circumstantial evidence supporting its theory that the guitar was, in fact, stolen by Poor.

The State introduced evidence that Hoague would not have sold the guitar or given the guitar away because his musical instruments were important to him. Hoague's daughter testified that Hoague would have rather been homeless than sell his instruments. She stated that Hoague had been homeless several times, and "one thing that he never got rid of was any of his musical instruments." 4 VRP at 365. Both of Hoague's children testified that of all his instruments, Hoague was particularly sentimental about his guitar. Hoague's son stated that the guitar was especially important to Hoague because it was given to him by a friend.

Furthermore, during opening statement, Poor's counsel alleged that Poor bought the guitar from Hoague because Hoague "needed some money." 2 VRP at 203. However, the State introduced evidence that Hoague was not struggling financially. Hoague's daughter testified that Hoague received a monthly income and was meticulous about his receipts and careful about his finances. When Hoague died, he had money in his bank account and was not behind on any of his bills.

Whether Hoague's children were credible was a question for the trier of fact and is not subject to review. *Ague-Masters*, 138 Wn. App. at 102. Viewing the testimony and all reasonable inferences therefrom in the light most favorable to the State, a rational trier of fact could find that Hoague did not sell his guitar or give his guitar away to Poor or to anyone else. Therefore, we conclude that sufficient evidence supports Poor's conviction for trafficking in stolen property.

## II. UNANIMOUS JURY VERDICT

Poor argues that she was deprived of her constitutional right to a unanimous jury verdict because the State failed to elect which of the three different methamphetamine stashes found in the home gave rise to the charge of possession of methamphetamine, and the court did not instruct the jury that it needed to be unanimous. We agree.

A defendant has a constitutional right to a unanimous jury verdict. *State v. Knutz*, 161 Wn. App. 395, 407, 253 P.3d 437 (2011). To protect this right, in cases where the evidence indicates that more than one distinct criminal act has been committed but the defendant is charged with only one count of criminal conduct, either (1) the State must elect the act upon which it will rely on for the conviction or (2) jurors must be instructed that they must agree that the same underlying criminal act has been proved beyond a reasonable doubt. *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), *overruled in part on other grounds by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988). "The failure to do so in multiple acts cases is constitutional error." *State v. Bobenhouse*, 166 Wn.2d 881, 893, 214 P.3d 907 (2009). "The error stems from the possibility that some jurors may have relied on one act or incident and some another, resulting in a lack of unanimity on all of the elements necessary for a valid conviction." *Kitchen*, 110 Wn.2d at 411.

However, this rule does not apply when the State presents evidence of multiple acts that are a "'continuing course of conduct.'" *State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989) (quoting *Petrich*, 101 Wn.2d at 571). To determine whether criminal conduct constitutes one continuing act, the trial court must evaluate the facts in a commonsense manner. *Id.* A reviewing court will consider "(1) the time separating the criminal acts and (2) whether the criminal acts

15

involved the same parties, location, and ultimate purpose." *State v. Brown*, 159 Wn. App. 1, 14, 248 P.3d 518 (2010) (citing *State v. Love*, 80 Wn. App. 357, 361, 908 P.2d 395 (1996).

To convict Poor of possession of a controlled substance, the State must establish the nature of the substance and Poor's possession of the substance. RCW 69.50.4013. Possession may be proven by actual possession or constructive possession. *State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969). A person has actual possession when he or she has physical custody of the item. *Id.* A person has constructive possession when he or she has dominion and control over the item. *Id.*

At trial, the State introduced evidence of three stashes of methamphetamine found in Hoague's kitchen: (1) a pipe full of methamphetamine in a kitchen drawer found on July 9 by Heiskell, (2) a spoon with methamphetamine on it above the kitchen stove found on July 18 by Hoague's son, and (3) a bag of methamphetamine inside of a fanny pack bag in the kitchen area found on July 21 by Hoague's daughter. The State did not elect one stash of methamphetamine to rely upon for the possession charge. The State maintained that Poor constructively possessed the three stashes of methamphetamine found in Hoague's home because Poor had dominion and control over Hoague's home when he was in the hospital on July 9. Although the pipe was found on July 9, the State asserted to the jury that it could draw a "reasonable inference" that the spoon and the fanny pack found on July 18 and July 21 were in the home on July 9. 4 VRP at 439.

On appeal, the State argues that it was not required to elect one possession and it was proper to not provide a unanimity instruction because all possessions equated to a single "unit of prosecution" under *State v. Adel*, 136 Wn.2d 629, 965 P.2d 1072 (1998). Br. of Resp't at 16. In *Adel*, the court addressed the unit of prosecution for possession of a controlled substance. Adel

16

challenged his two marijuana possession convictions as violating the prohibition against double jeopardy. *Adel*, 136 Wn.2d at 631. Adel possessed marijuana simultaneously in two different locations, in his car and in his store. *Id.* The issue was whether Adel's possession of marijuana in two places constituted one criminal act (or unit of prosecution), in which case his two convictions would violate double jeopardy. *Id.* at 632. The court concluded that "[t]he possession statute [did] not authorize multiple convictions based upon a drug being stashed in multiple places within a defendant's actual or constructive possession." *Id.* at 636. Therefore, Adel could be found guilty on only one count of possession where all the drugs were within his domain and control at the same time. *Id.* at 637.

The State argues that like *Adel*, Poor's single charge did not constitute three distinct instances of possession because Poor had dominion and control over Hoague's residence. However, the State's argument is misplaced for multiple reasons. Here, Poor argues that she was entitled to a unanimity instruction, not that her one conviction violated double jeopardy. Even so, the State's reasoning is such that even in circumstances where temporal differences in possession of illegal substances are so great as to clearly present a different unit of prosecution, the defendant is essentially immune from any further charges. As the concurring opinion addressed in *Adel*,

> if a person were in possession of 20 grams of marijuana and used the substance in its entirety, and, thereafter, several days later acquired another 15 grams of marijuana for personal use, two distinct units of prosecution are likely present under such circumstances.

136 Wn.2d at 640-41 (Talmadge, J. concurring). Here, the State presented evidence of methamphetamine found several days apart. The substantial time period between when the methamphetamine was found suggests more than one unit of prosecution for double jeopardy

purposes, and the inability for the State to charge multiple possessions in circumstances where at least two distinct possessions occur is misguided.

Poor argues that *State v. King*, 75 Wn. App. 899, 878 P.2d 466 (1994), controls. King was convicted of one count of cocaine possession based on evidence that he possessed cocaine in a Tylenol bottle in a car in which he was a passenger and in a fanny pack he was wearing. *King*, 75 Wn. App. at 901. King claimed the cocaine in the fanny pack was planted by the police and conflicting evidence existed as to whether the cocaine in the car belonged to the driver. *Id.* at 901-04. At trial, the prosecutor did not make an election as to the specific instance of possession, and the trial court did not give a unanimity instruction. *Id.* at 903. On appeal, the court agreed with King that a unanimity instruction was required because the State's evidence tended to show two distinct and separate acts, not a continuing course of conduct. *Id.* The court explained,

> [t]he State's evidence tended to show two distinct instances of cocaine possession occurring at different times, in different places, and involving two different containers-the Tylenol bottle and the fanny pack. One alleged possession was constructive; the other, actual.

*Id.* The court held that failure to give the unanimity instruction was not a harmless error because a rational trier of fact could entertain reasonable doubt as to whether King was responsible for either possession due to sufficient conflicting evidence. *Id.* at 903-04.

Here, as in *King*, the evidence shows distinct and separate criminal acts and not a continuing course of conduct. Here, the methamphetamine was found in three different locations throughout the house, and each stash was found on a different date. The first stash was found in a kitchen drawer on July 9, the second stash was found on top of the stove on July 18, and the third stash was found on the kitchen counter on July 21. Additionally, the first stash was hidden inside

18

of a drawer, the second stash was overtly placed on a spoon, and the third stash was concealed inside of a fanny pack.

The State argues that Poor constructively possessed the drugs, and that the jury could reasonably infer that all three possessions occurred at the same time, when Poor had dominion and control over the house on July 9. To support its theory, the State presented evidence that Poor used a spoon and a pipe to ingest drugs on July 8, and that others inside of the house were using drugs on July 9. But the State did not produce any evidence of a discernable connection between the three stashes, nor did the State present any connection between the three stashes and Poor. Viewed in a commonsense manner, the three possessions are reasonably characterized as individual, separate criminal acts and not as a continuous course of conduct.

As in *King*, because the evidence tended to show distinct instances of possession, either the State was required to make an election as to the specific instance of possession upon which it relied, or the trial court was required to give a unanimity instruction to safeguard Poor's constitutional right to a unanimous verdict. *Id.* at 903. Because the State did not elect an act of possession and the trial court did not give a unanimity instruction, Poor's constitutional right to a unanimous verdict was violated.

We must next determine whether this error was harmless beyond a reasonable doubt. When a jury is not instructed that it must be unanimous in a situation where such an instruction is required, "the jury verdict will be affirmed only if that error was harmless beyond a reasonable doubt." *State v. Camarillo*, 115 Wn.2d 60, 64, 794 P.2d 850 (1990). This approach presumes the error was prejudicial. *Kitchen*, 110 Wn.2d at 411. This presumption can be overcome "only if no

19

rational juror could have a reasonable doubt as to any of the incidents alleged." *State v. Coleman*, 159 Wn.2d 509, 512, 150 P.3d 1126 (2007) (citing *Kitchen,* 110 Wn.2d at 411-12).

The factual circumstances in *Camarillo* demonstrate when the failure to instruct the jury on unanimity is harmless. 115 Wn.2d at 70-72. The victim testified in detail to three incidents of indecent liberties. *Id.* Camarillo "'offered no evidence upon which the jury could discriminate between the incidents'" other than his own testimony. *Id.* at 70 (quoting *State v. Camarillo*, 54 Wn. App. 821, 828, 776 P.2d 176 (1989)); *see also Kitchen*, 110 Wn.2d at 413-14 (noting that failure to provide a unanimity instruction is harmless where the jury could not rationally distinguish between the incidents). The court reasoned that compelling evidence established that each act had occurred, there was no conflicting or impeaching testimony other than the defendant's, and the victim provided specific and detailed testimony. *Camarillo*, 115 Wn.2d at 71-72; *see also Bobenhouse*, 166 Wn.2d at 894-95. Thus, the court held that the lack of a unanimity instruction was harmless because if the jury reasonably believed that one incident occurred, the jury must have believed that all incidents occurred. *Camarillo*, 115 Wn.2d at 71-72.

Here, a reasonable jury could have not believed that Poor constructively possessed all of the stashes of methamphetamine found in Hoague's home. The State did not present compelling evidence that established Poor's possession over the spoon with methamphetamine found on July 18 and the fanny pack with a bag of methamphetamine inside found on July 21. The jury did not hear any evidence as to what events occurred after Hoague was taken to the hospital on July 9. Although it is undisputed that Poor stayed at the home while Hoague was in the hospital on July 9, the State did not establish when she left the residence or whether anyone else besides Poor was in the residence between July 9 and July 18, when the spoon was found. Furthermore, the State

did not present evidence connecting Poor to the spoon or the fanny pack. Ramey testified that Poor and Hoague used a spoon to assist in ingesting methamphetamine on July 8, but the State did not present any evidence showing that the spoon found on July 18 was the same spoon or that the spoon belonged to Poor. The State also did not present any evidence showing that Poor owned or used the fanny pack found on July 21.

The lack of compelling evidence supporting Poor's possession of the spoon and the fanny pack distinguishes these possessions from the pipe found on July 9. When Heiskell found the pipe full of methamphetamine in Hoague's kitchen drawer on the evening of July 9, Poor was present. Poor did not deny that she owned the pipe, and instead threatened Heiskell in an attempt to persuade her to not call the police.

"[A] defining characteristic of a multiple acts case is not only that a single count could be proved by evidence of any of the acts but also that each individual act could support a single, specific count." *State v. Furseth*, 156 Wn. App. 516, 522, 233 P.3d 902 (2010). But here, a rational juror could have a reasonable doubt as to whether each act established Poor's possession of methamphetamine beyond a reasonable doubt. *Camarillo*, 115 Wn.2d at 71. Therefore, we conclude that the State did not overcome the presumption of prejudice, and the lack of a unanimity instruction was not harmless.

Accordingly, we reverse Poor's conviction for possession of methamphetamine and remand this charge for retrial. *King*, 75 Wn. App. at 904.

III. STRICT LIABILITY

Poor argues that her possession of methamphetamine conviction should be reversed and dismissed because RCW 69.50.4013, the drug possession statute, does not require proof of knowledge and is therefore unconstitutional. Poor contends that "[i]nterpreting possession of a controlled substance as a strict liability offense violates the presumption of innocence and due process of law." Br. of Appellant at 35. We disagree.

Currently, it is settled law that possession of a controlled substance does not have a mens rea element. *See State v. Cleppe*, 96 Wn.2d 373, 380, 635 P.2d 435 (1981); *State v. Bradshaw*, 152 Wn.2d 528, 535, 98 P.3d 1190 (2004). In *Cleppe*, the court determined that whether intent or guilty knowledge is to be made an essential element of this crime is a matter to be determined by the legislature. 96 Wn.2d at 380. The court explained that the omission of the mens rea element was a purposeful act of the legislature, and that "if the legislature had intended guilty knowledge or intent to be an element of the crime of simple possession of a controlled substance it would have put the requirement in the act." *Id.*

Poor asserts that our Supreme Court is "reconsidering" its jurisprudence on the mens rea element of possession of a controlled substance, citing *State v. A.M.*, No. 76758-5-I (Wash. Ct. App. Jul. 30, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/767585.pdf, *rev'd*, 194 Wn.2d 33, 448 P.3d 35 (2019). Br. of Appellant at 35-36. However, on review, the Supreme Court declined to consider this issue and resolved the case on a different ground. *A.M.*, 194 Wn.2d at 44.

Although the concurring opinion addressed the criminalization of mere drug possession without proof of a mens rea, denouncing *Cleppe* and *Bradshaw*, the concurring opinion is not precedential. *A.M.*, 194 Wn.2d at 45, 53-58 (Gordon McCloud, J. concurring). Therefore, we

remain bound by our Supreme Court precedent. *State v. Bailey*, 41 Wn. App. 724, 727, 706 P.2d 229 (1985).

Based on this precedent, we conclude that RCW 69.50.4013 is constitutional.

IV. SUFFICIENCY OF THE CHARGING DOCUMENT

Poor argues that the amended information is constitutionally deficient because it does not allege any particular facts to support the essential elements of the trafficking in stolen property charge.[5] We disagree.

Poor challenges the sufficiency of the information on constitutional grounds. "'We review allegations of constitutional violations de novo.'" *State v. Johnson*, 180 Wn.2d 295, 300, 325 P.3d 135 (2014) (quoting *State v. Siers*, 174 Wn.2d 269, 273-74, 274 P.3d 358 (2012)). In a criminal case, a person accused of a crime has a constitutional right to notice of the charges against them. *State v. Pry*, 194 Wn.2d 745, 751, 452 P.3d 536 (2019). The State gives notice of the charges in an information, also known as a charging document. *Johnson*, 180 Wn.2d at 300.

The "information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." CrR 2.1(a)(1). A charging document must include the essential elements, both statutory and nonstatutory, of all charged crimes. *Pry*, 194 Wn.2d at 751. The charging document must also provide the facts supporting the elements of the offense. *State v. Nonog*, 169 Wn.2d 220, 226, 237 P.3d 250 (2010).

Poor did not object to the sufficiency of the information or request a bill of particulars below. An appellant may challenge for the first time on appeal only the constitutional sufficiency

---

[5] Poor challenges the amended information as it relates to all three charges, but because we resolve her convictions for failing to summon assistance and possession of methamphetamine on different grounds, we need not address her challenges to the amended information as to those charges.

of a charging document on the basis that the document failed to allege each essential element of the crime charged. *State v. Kjorsvik*, 117 Wn.2d 93, 102, 812 P.2d 86 (1991); *see also State v. Zillyette*, 178 Wn.2d 153, 161-62, 307 P.3d 712 (2013). A challenge to the charging document for vagueness is waived if the defendant did not request a bill of particulars before trial. *Nonog*, 169 Wn.2d at 225 n.2 (citing *State v. Holt*, 104 Wn.2d 315, 320, 704 P.2d 1189 (1985)). "[I]f the information states each statutory element of a crime, but is vague as to some other matter significant to the defense, a bill of particulars is capable of correcting that defect." *Holt*, 104 Wn.2d at 320.

Poor does not contend that the charging document failed to include all the statutory elements for the crime of trafficking in stolen property. Instead, she asserts that the charging document violated the essential elements rule because it failed to include particularized facts supporting the essential elements of the charge. Specifically, Poor claims that the charging document failed to allege what property Poor trafficked, how Poor knew the property was stolen, or what manner she trafficked the property.[6] However, none of these things are elements of the

---

[6] In her two statements of additional authorities, Poor cites to *Pry*, 194 Wn.2d at 752 and *State v. Hugdahl*, 195 Wn.2d 319, 324, 458 P.3d 760 (2020). In both cases, the court found the information to be constitutionally deficient. However, both cases are distinguishable. In *Pry*, the information did not include any of the six essential elements identified by statute or include any facts to describe what the crime entailed. 194 Wn.2d at 757, 759. Here, Poor does not argue that the charging document lacked the statutory elements of the crime charged.

In *Hugdahl*, the information was deficient because it alleged that the delivery of a controlled substance occurred within 1,000 feet of a school bus *route* instead of within 1,000 feet of a school bus *stop*. 195 Wn.2d at 328. The court held that although a bus stop is included in a bus route, the term "route" is less specific than the language in the statute, which provided for a bus "stop." *Id.* at 327-28. Here, Poor does not allege that the charging document provided different, broader language than what is used in the statute.

crime of trafficking in stolen property.[7] As noted above, if Poor desired more details of the charge, she could have asked for a bill of particulars. Because she failed to do so, she has waived her challenge to the amended information.[8]

SAG

In her SAG, Poor asserts that (1) she never received discovery paperwork despite her numerous attempts to obtain the paperwork and (2) the trial court erred in denying her request for new trial counsel because her counsel was inadequate. We decline review of both claims.

A SAG must adequately inform the court of the nature and occurrence of alleged errors. RAP 10.10(c); *State v. Calvin*, 176 Wn. App. 1, 26, 316 P.3d 496 (2013). Additionally, we do not review matters outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995). Issues involving facts outside of the record are properly raised in a personal restraint petition rather than a SAG. *Id.*

The record on appeal does not contain any information regarding Poor's request for discovery paperwork. Because Poor's assertion is dependent on matters outside of the record, we do not address this issue in this appeal. *Id.*

---

[7] Under RCW 9A.82.050(1), a person commits trafficking in stolen property in the first degree when a person "knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or who knowingly traffics in stolen property."

[8] *See also State v. Mason*, 170 Wn. App. 375, 384-85, 285 P.3d 154 (2012), where this court held that a challenge to an information on the grounds that it was factually deficient constituted a vagueness challenge that is waived if raised for the first time on appeal.

Poor argues that her counsel was inadequate because he was not "intellig[i]ble" regarding her case and "did not try to represent me on [my] behalf." SAG at 1. Poor states that instead of representing her, her counsel "only went through the court motions." SAG at 1.

One essential element of an ineffective assistance of counsel claim is a showing that her counsel's performance was deficient. *McFarland*, 127 Wn.2d at 336-37; *see also State v. Hendrickson,* 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). Poor does not inform us of the nature or the occurrence of her counsel's alleged errors. RAP 10.10(c); *Calvin*, 176 Wn. App. at 26. Instead, she provides no detail or explanation about when her counsel failed to represent her or how her counsel's motions were deficient. As a result, we do not consider this issue.

## CONCLUSION

We hold that insufficient evidence supports Poor's conviction for failing to summon assistance, but that sufficient evidence supports Poor's conviction for trafficking in stolen property. We also hold that Poor was deprived of her constitutional right to a unanimous jury verdict on her possession of a controlled substance conviction, and that her conviction for possession of a controlled substance did not violate her due process rights because possession of a controlled substance remains a strict liability offense. Last, we hold that the amended information was constitutionally sufficient and we decline to address the issues set forth in Poor's SAG.

No. 52683-2-II

Accordingly, we reverse the failing to summon assistance conviction and remand for dismissal with prejudice, affirm the trafficking in stolen property conviction, and reverse the possession of a controlled substance conviction and remand for a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

LEE, C.J.

GLASGOW, J.