OWENS, J.
*592 ¶1 A drunk driver struck and disabled another vehicle, then fled into the early morning darkness. A Good Samaritan stopped to help the vehicle that had been struck. While helping, the Good Samaritan sustained fatal injuries due to a secondary accident. We are asked whether, as a matter of law, the drunk driver's acts were too attenuated from the Good Samaritan's death for criminal liability *593 to attach. We conclude that the drunk driver's acts were the legal cause of the Good Samaritan's death because those acts were criminal, caused direct harm as well as risk of further harm, and occurred close in time and location to the ultimate harm that befell the Good Samaritan. We further conclude that the issue of intervening, superseding cause was proper for the jury to determine as a matter of actual cause using a reasonable foreseeability standard and that the vehicular homicide conviction is supported by sufficient evidence. Accordingly, we hold that the drunk driver's acts proximately caused the Good Samaritan's death, and we affirm.
FACTS AND PROCEDURAL HISTORY
¶2 Shortly before 6:00 a.m. on Sunday, December 7, 2014, Joshua Cane Frahm was intoxicated and drove his truck erratically at a high rate of speed on several freeways in Vancouver, Washington. Two different motorists called 911 to report Frahm's dangerous driving, which included cutting off a vehicle and nearly rear-ending several others. Frahm was going 85 m.p.h. when he rear-ended a vehicle driven by Steven Klase. The impact propelled Klase's vehicle into the median barrier and caused it to spin and ricochet, leaving it disabled across the left and middle lanes. Frahm fled the scene without stopping to render aid to Klase, who was seriously injured in the collision.
¶3 Richard Irvine was driving the same direction on the same freeway that morning and witnessed the collision. Irvine pulled his sedan over onto the right shoulder of the freeway, activated his emergency flashers, exited his sedan, and crossed the freeway on foot to render aid to Klase, who remained trapped inside his vehicle. Irvine called 911 from his cell phone and was on the line with emergency dispatchers when Klase's vehicle was struck a second time by a minivan. The driver of the minivan had shifted into the left lane when he saw the flashers of Irvine's car on the right *594 shoulder, but the driver did not *598 notice Klase's disabled vehicle in the still-dark morning until it was too late to avoid hitting it. The second impact to Klase's vehicle from the minivan propelled Klase's vehicle into Irvine, throwing Irvine approximately 20 feet across the roadway and causing him to sustain severe brain and spinal injuries. Irvine died 12 days later as a result of his injuries and pneumonia.
¶4 The State charged Frahm with half a dozen crimes associated with the incident, including vehicular homicide. The case proceeded to a jury trial. The trial court allowed the issue of intervening, superseding cause to go to the jury. The trial court instructed the jury according to 11A Washington Practice: Washington Pattern Jury Instructions: Criminal 90.08, at 278 (4th ed. 2016) (WPIC), which stated in relevant part:
[I]f a proximate cause of the death was a new independent intervening act of the deceased or another which the defendant, in the exercise of ordinary care, should not reasonably have anticipated as likely to happen, the defendant's act is superseded by the intervening cause and is not a proximate cause of the death. ...
However, if in the exercise of ordinary care, the defendant should reasonably have anticipated the intervening cause, that cause does not supersede the defendant's original act and the defendant's act is a proximate cause. It is not necessary that the sequence of events or the particular injury be foreseeable. It is only necessary that the death fall within the general field of danger which the defendant should have reasonably anticipated.
Clerk's Papers (CP) at 106 (Instr. 12). Frahm objected to that instruction.
¶5 The jury found Frahm guilty of vehicular homicide, as well as vehicular assault, hit-and-run, conspiracy to commit perjury, and false reporting. Frahm appealed his convictions, arguing, among other claims, that the State presented insufficient evidence to support his conviction for vehicular homicide. The Court of Appeals affirmed, and we granted review. State v. Frahm , 191 Wash.2d 1026, 428 P.3d 1170 (2018).
*595 ISSUE
¶6 Did Frahm's acts proximately cause Irvine's death?
a. Were Frahm's acts the legal cause of Irvine's death?
b. Does sufficient evidence support Frahm's vehicular homicide conviction when the jury was charged with the issue of intervening, superseding cause and instructed to apply a reasonable foreseeability standard?
ANALYSIS
¶7 Frahm's challenge to his vehicular homicide conviction has taken different forms during his appeal. Though Frahm objected to use of the pattern jury instruction at trial, he did not assign error to the instruction on appeal. Rather, Frahm argued that insufficient evidence supported his conviction. In his petition for review, Frahm argued that the foreseeability standard applied by the Court of Appeals erroneously heightened the threshold for a superseding cause. In his supplemental brief, Frahm challenged use of a tort-derived foreseeability standard to determine liability for vehicular homicide, as well as sufficiency of the evidence underlying his conviction. Properly before us is whether sufficient evidence supports Frahm's conviction for vehicular homicide.
¶8 When reviewing a challenge to the sufficiency of evidence, we view the evidence in the light most favorable to the State and determine whether "any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas , 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). We review questions of law de novo. State v. Johnson, 128 Wash.2d 431, 443, 909 P.2d 293 (1996).
Proximate Cause
¶9 Vehicular homicide is defined as follows:
(1) When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving *596 of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle: *599 (a) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502 ; or
(b) In a reckless manner; or
(c) With disregard for the safety of others.
RCW 46.61.520. Vehicular homicide is a strict liability offense. See State v. Rivas, 126 Wash.2d 443, 451-53, 896 P.2d 57 (1995). "[T]he conduct of the defendant must be both (1) the actual cause, and (2) the 'legal' ... cause" of the death. Id. at 453, 896 P.2d 57. In Washington, unlike other jurisdictions, we use the term "proximate cause" to refer to both prongs of causation together. See Hartley v. State, 103 Wash.2d 768, 777, 698 P.2d 77 (1985) ("Washington law recognizes two elements to proximate cause: Cause in fact and legal causation"); State v. Bauer, 180 Wash.2d 929, 936 n.5, 329 P.3d 67 (2014). To determine whether Frahm's acts proximately caused Irvine's death, we must determine whether Frahm's acts were both the legal cause and the actual cause of the death.
¶10 Actual cause, or cause in fact, "refers to the 'but for' consequences of an act-the physical connection between an act and an injury." Hartley, 103 Wash.2d at 778, 698 P.2d 77. Legal cause presents a more nuanced inquiry:
Legal causation ... rests on policy considerations as to how far the consequences of [a] defendant's acts should extend. It involves a determination of whether liability should attach as a matter of law given the existence of cause in fact. ... [D]etermination of legal liability will be dependent on 'mixed considerations of logic, common sense, justice, policy, and precedent.'
Id. at 779, 698 P.2d 77 (quoting King v. City of Seattle, 84 Wash.2d 239, 250, 525 P.2d 228 (1974) ) While actual cause is a question of fact generally left to the jury to "determin[e] what actually occurred," id. at 778, 698 P.2d 77, legal cause "is a question of law for the court based on policy considerations."
*597 Colbert v. Moomba Sports, Inc., 163 Wash.2d 43, 51, 176 P.3d 497 (2008). "The focus in the legal causation analysis is whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability." Schooley v. Pinch's Deli Market, Inc., 134 Wash.2d 468, 478-79, 951 P.2d 749 (1998). " '[A]s to cause in fact, tort and criminal situations are exactly alike.' " Bauer, 180 Wash.2d at 936, 329 P.3d 67 (quoting State v. Dennison, 115 Wash.2d 609, 624 n.15, 801 P.2d 193 (1990) ). As to legal causation, however, tort and criminal situations differ. Id. at 940, 329 P.3d 67.
a. Legal Cause
¶11 In Bauer, we recognized and established that as a rule, " 'legal cause' in criminal cases differs from, and is narrower than, 'legal cause' in tort cases in Washington." Id.
Commentators and courts recognize that criminal law and tort law serve different purposes and therefore have different principles of legal causation. "[W]ith crimes, where the consequences of a determination of guilt are more drastic ... it is arguable that a closer relationship between the result achieved and that intended or hazarded should be required." "The wider doctrines of causation currently applied in tort law should not be extended to criminal law. ... [I]n criminal law, ... it is not normally enough merely to prove that [the] accused occasioned the harm; he must have 'caused' it in the strict sense."
Id. at 936-37 (alterations in original) (citations omitted) (quoting 1 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 6.4(c) at 472 (2d ed. 2003) ; H.L.A. HART & TONY HONORE, CAUSATION IN THE LAW 350-51 (2d ed. 1985)). We examined the case law and "found no Washington case upholding [criminal] liability ... where the accused did not actively participate in the immediate physical impetus of the harm." Id. at 940, 329 P.3d 67.
¶12 Bauer was charged with third degree assault when he left loaded guns unsecured in his home, and his girlfriend's child " 'swiped' " one of those guns and two days later carried it to school where it discharged, injuring another student. Id. at 933, 329 P.3d 67. We held "legal causation is not *598 satisfied" as to Bauer "[b]ecause legal causation in civil cases is broader and more flexible than it is in criminal cases." Id. at 942, 329 P.3d 67. *600 ¶13 We distinguished Bauer from cases where a defendant's "initial act was not only intentional, but felonious, and capable of causing harm in and of itself." Id. at 939, 329 P.3d 67. For example, we contrasted Bauer with State v. Leech , 114 Wash.2d 700, 705, 790 P.2d 160 (1990), in which an arsonist's actions proximately caused the death of a firefighter who died in the course of responding to the arson fire. We held that Leech was criminally liable for the firefighter's death despite the fact that the arson fire was but one of the causes of the death. Id. We emphasized that Leech "started the fire-clearly an intentional criminal act capable of causing harm in and of itself." Bauer , 180 Wash.2d at 939, 329 P.3d 67. We also contrasted Bauer with State v. Perez-Cervantes , 141 Wash.2d 468, 6 P.3d 1160 (2000), in which the defendant stabbed the victim several days before the victim died. We held that Perez-Cervantes was criminally liable for the victim's death despite the fact that drug use also contributed to the death. Id. at 480, 6 P.3d 1160. Again, we emphasized that Perez-Cervantes "performed an intentional criminal act-stabbing-that directly caused harm." Bauer, 180 Wash.2d at 939, 329 P.3d 67. In contrast, Bauer's act-owning guns and keeping them loaded around his home-was "not felonious or criminal." Id.
¶14 We conclude that Frahm's acts of hitting Klase's vehicle while intoxicated and fleeing the scene were felonious and directly caused harm in and of themselves. This case is similar to Leech. There, as here, the defendant criminally caused a harm that the victim died while responding to. Furthermore, Frahm's criminal acts were volitional. The record establishes that Frahm drove aggressively and nearly rear-ended several other vehicles prior to hitting Klase, while the crime of hit-and-run requires a knowing mens rea. RCW 46.52.020 ; State v. Vela, 100 Wash.2d 636, 673 P.2d 185 (1983).
¶15 By contrast, the facts of the case at bar are readily distinguishable from Bauer. Bauer had no knowledge that *599 his girlfriend's child had taken the gun. Here, Frahm was acutely aware that he had caused harm and initiated a substantial risk of further harm when he fled after disabling Klase's vehicle. In Bauer, the gun discharged and injured another student two days after the child swiped the gun. See 180 Wash.2d at 941, 329 P.3d 67 (noting " 'remoteness in time between the criminal act and the injury [may be] dispositive to the question of legal cause ...' " (quoting Kim v. Budget Rent A Car Sys., Inc., 143 Wash.2d 190, 205, 15 P.3d 1283 (2001) )). Here, Irvine sustained fatal injuries within minutes of Frahm striking Klase's vehicle and fleeing the scene. Bauer's act was neither criminal nor directly caused harm. Here, Frahm's acts-hitting Klase's vehicle while intoxicated and fleeing the scene-were criminal and caused direct harm.
¶16 Though in Bauer we stated that we had found no Washington case upholding criminal liability "where the accused did not actively participate in the immediate physical impetus of the harm," that inquiry is misleading in the context of crimes of criminal negligence, such as vehicular homicide. 180 Wash.2d at 940, 329 P.3d 67. Rather, a defendant acts with criminal negligence "when he or she fails to be aware of a substantial risk that a wrongful act may occur and his or her failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation." RCW 9A.08.010(l)(d). Here, Frahm grossly deviated from the standard of care by disregarding the substantial risk of further injury, which did in fact occur minutes later.
¶17 This is a case where, even under Bauer, "liability should attach as a matter of law" because Frahm's acts were criminal, caused direct harm as well as risk of further harm, and occurred close in time and location to the ultimate harm that befell Irvine. Hartley, 103 Wash.2d at 779, 698 P.2d 77. Accordingly, we hold legal causation for vehicular homicide satisfied as to Frahm.
*600 b. Actual Cause
¶18 Frahm contends that insufficient evidence supports his vehicular homicide conviction because an intervening, superseding cause relieved him of criminal liability for Irvine's death. He argues that Irvine's act of crossing the freeway on foot to render aid to Klase and/or the secondary *601 collision by the minivan constituted intervening, superseding causes of Irvine's death. "[A]n intoxicated defendant may still avoid responsibility for a death which results from his or her driving if the death is caused by a superseding, intervening event." Rivas, 126 Wash.2d at 453, 896 P.2d 57. Frahm also argues that use of a reasonable foreseeability standard to determine an intervening, superseding cause is erroneous in the context of criminal liability for vehicular homicide.
¶19 The most helpful definition of intervening, superseding cause is drawn from tort law. See Campbell v. ITE Imperial Corp., 107 Wash.2d 807, 811-14, 733 P.2d 969 (1987). An intervening cause is a "force that actively operates to produce harm to another after the actor's act or omission has been committed." Klein v. Pyrodyne Corp., 117 Wash.2d 1, 17 n.7, 810 P.2d 917, 817 P.2d 1359 (1991). "If the intervening cause is strong enough to relieve the wrongdoer of any liability, it becomes a superseding cause ." BLACK'S LAW DICTIONARY 265 (10th ed. 2014) (defining "intervening cause"). " 'Whether an act may be considered a superseding cause sufficient to relieve a defendant of liability depends on whether the intervening act can reasonably be foreseen by the defendant; only intervening acts which are not reasonably foreseeable are deemed superseding causes.' " Crowe v. Gaston, 134 Wash.2d 509, 519, 951 P.2d 1118 (1998) (internal quotation marks omitted) (quoting Cramer v. Dep't of Highways, 73 Wash. App. 516, 520, 870 P.2d 999 (1994) ). An intervening act will not constitute a superseding cause if the original actor " 'should have realized that a third person might so act.' " Campbell, 107 Wash.2d at 813, 733 P.2d 969 (quoting RESTATEMENT (SECOND) OF TORTS § 447(a) ( AM. LAW INST. 1965) ).
*601 ¶20 Whether an intervening act rises to the level of a superseding cause is an issue of actual cause. Maltman v. Sauer, 84 Wash.2d 975, 982, 530 P.2d 254 (1975) ; McCoy v. Am. Suzuki Motor Corp., 136 Wash.2d 350, 358, 961 P.2d 952 (1998). We trust juries to make that determination. However, that factual question may be determined as a matter of law if reasonable minds could not differ. See McCoy, 136 Wash.2d at 358, 961 P.2d 952 ; Kim, 143 Wash.2d at 203, 15 P.3d 1283. In other words, "[a]n intervening act may be so highly extraordinary or unexpected as to fall outside the realm of reasonable foreseeability as a matter of law." Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP , 110 Wash. App. 412, 431, 40 P.3d 1206 (2002).
¶21 In State v. Roggenkamp, 153 Wash.2d 614, 106 P.3d 196 (2005), we affirmed a vehicular homicide conviction despite the fact that the driver of the vehicle that the defendant struck was intoxicated and pulled out in front of the defendant. We concluded that the struck vehicle driver's "actions were, at most, a concurring cause, not a superseding cause of the accident." Id. at 631, 106 P.3d 196 (stating that a "concurring cause does not shield a defendant from a vehicular homicide conviction"). Sufficient evidence existed for the trial court to find that given the clear residential character of the road, "[a] vehicle pulling out ... (whether driven by an intoxicated driver or not) was an occurrence that should have been reasonably foreseeable to Roggenkamp." State v. Roggenkamp , 115 Wash. App. 927, 946, 64 P.3d 92 (2003), aff'd, 153 Wash.2d at 630-31, 106 P.3d 196.
¶22 Frahm in effect argues that the tort-derived foreseeability standard does not properly distinguish an intervening act from a superseding cause for purposes of criminal liability for vehicular homicide because of "Bauer's requirement of narrower legal cause in criminal law than in tort." Pet'r's Suppl. Br. at 15. However, we expressly noted in Bauer that " 'as to cause in fact, tort and criminal situations are exactly alike .' " 180 Wash.2d at 936, 329 P.3d 67 (emphasis added) (quoting Dennison, 115 Wash.2d at 624 n.15, 801 P.2d 193 ). Reasonable *602 foreseeability distinguishes a superseding cause from a mere intervening event. Because that distinction presents a question of cause in fact for a jury, not a question of legal cause for a court, the foreseeability standard passes muster under Bauer.
¶23 Frahm's arguments that the Court of Appeals applied erroneous foreseeability standards are similarly unavailing. Frahm *602 argues that the Court of Appeals contravened Roggenkamp by restricting the threshold for superseding cause to situations in which the foreseeability of the act that caused the harm was " 'highly extraordinary or unexpected.' " Pet. for Review at 10. However, we conclude that the Court of Appeals properly employed Micro Enchancement's "highly extraordinary or unexpected" standard to determine when a court should take a question of intervening, superseding cause from a jury as a matter of law. 110 Wash. App. at 431, 40 P.3d 1206. Frahm also argued that the Court of Appeals adopted a new " 'general field of danger' " foreseeability standard for liability for vehicular homicide and that the Court of Appeals based its affirmance on that new standard. Pet. for Review at 11. However, the "general field of danger" language was drawn directly from the pattern jury instruction, which the jury received at trial. WPIC 90.08; CP at 106. Thus, the Court of Appeals applied proper standards.
¶24 Here, Irvine's act of crossing the freeway on foot to help Klase and the secondary collision by the minivan were intervening events because both occurred after Frahm's criminal acts of hitting Klase's vehicle while intoxicated and then fleeing the scene. The jury weighed the evidence and determined that neither intervening event superseded Frahm's criminal acts as the actual cause of Irvine's death. The question of foreseeability was properly given to the jury because reasonable minds could have differed as to determination of that issue. Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found guilt beyond a reasonable doubt. Accordingly, we *603 hold that sufficient evidence supports Frahm's vehicular homicide conviction.
CONCLUSION
¶25 We conclude as a matter of law that Frahm's acts were the legal cause of Irvine's death because his acts were criminal, caused direct harm as well as risk of further harm, and occurred close in time and location to the ultimate harm that befell Irvine. We also conclude that the jury was properly charged with determining whether any intervening event superseded Frahm's acts as the actual cause of Irvine's death, that the jury properly applied a reasonable foreseeability standard to make that determination, and that sufficient evidence supports Frahm's vehicular homicide conviction. Accordingly, we hold that Frahm's acts proximately caused Irvine's death. We affirm the Court of Appeals.
WE CONCUR:
Fairhurst, C.J.
Johnson, J.
Stephens, J.
Wiggins, J.
González, J.
Yu, J.