# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53509-2-II |
| Respondent, | |
| v. | |
| I.M.C., | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J.—IMC appeals from his adjudication of guilt on one count of second degree taking a motor vehicle without permission. He argues that the evidence was insufficient to support the guilty finding. We disagree and affirm.

## FACTS[1]

On January 15, 2019, at approximately 9:45 AM, Peter Ballatan's son Andrew[2] started Peter's car and "left the car running in the driveway to warm up" Clerk's Papers (CP) at 58. Within five minutes, Andrew heard noises outside the house and "observed a female coming inside the fenced area." *Id.* Andrew knocked on the window and went outside, where he saw "two males on the sidewalk in front of the house, one dressed all in white standing next to a person wearing all

---

[1] These facts are drawn from the trial court's unchallenged findings of fact, which are verities on appeal. *State v. Escalante*, 195 Wn. 2d 526, 531, 461 P.3d 1183 (2020).

[2] Because Peter Ballatan and his son Andrew share the same last name, we refer to them by their first names to avoid confusion.

black with a black puffy coat." *Id.* The man wearing white approached the side gate and shouted a warning "toward the direction of the driveway." *Id.* A man in a red or orange jacket drove Peter's car out of the driveway "at a high rate of speed" and turned south. *Id.* "Andrew [also] saw that the two males in front of his house began running in the same direction that the vehicle was driving." *Id.* Andrew called 9-1-1 at approximately 9:50 AM. Andrew identified the man wearing the black puffy coat as IMC.

Peter also went outside to investigate and watched as his car left his driveway. Peter observed two males, including the male in the black puffy coat, standing on the front sidewalk. "As [the] car turned south onto Portland Avenue, he saw the two males in front of his residence turn and begin running in the [same] direction." *Id.* at 59. Peter also identified the person in the black puffy coat as IMC.

At about 10:30 AM, an officer found the car, which had been abandoned about four and a half miles from the Ballatans' residence. The officer who responded to the 911 call told Peter that his car had been found. The officer later "estimated that it would take him about two hours to walk that distance." *Id.* at 60.

Shiloh Martindale spoke to the officer who discovered the abandoned car. "Several minutes" before the officer discovered the car, Martindale had observed Peter's car pull up and stop in front of her neighbor's house. *Id.* at 61. Martindale noticed that when the car pulled up, it "appeared to be full of occupants." *Id.* When she looked again, Martindale saw two males examining the car's flat tire. One of the males was an African-American who was wearing a black puffy coat. At that time, Martindale "did not see anyone else on the sidewalk or driving on the street." *Id.*

"A few minutes later" Martindale saw "five or six kids," including the male in the black puffy coat, walk away from the car to an apartment complex across the street. *Id.* Minutes later, while speaking to the officer, Martindale noticed the same group of people walking down the street and pointed them out to the officer.

Peter drove to the location where the car had been found. He later testified that it was four and a half miles from his house. Peter estimated that it was about a 90 minute walk from his house.

At approximately 10:50 AM, officers stopped the group of juveniles about five blocks from where the car was found. An officer drove Peter to where the juveniles were, and Peter identified IMC as the "African-American male in the black clothing who had been standing in front of his house" when the car was stolen. *Id.* at 63.

The State charged IMC with second degree taking a motor vehicle without permission. IMC was 17 years old at the time of the crime, so the case proceeded to a bench trial before the juvenile court.

After hearing testimony, the trial court entered the written findings of fact described above. The trial court entered the following conclusions of law:

## II.

That [IMC] is guilty beyond a reasonable doubt of the crime of TAKING A MOTOR VEHICLE WITHOUT PERMISSION IN THE SECOND DEGREE in that in Pierce County, Washington on January 15, 2019 he did unlawfully and feloniously, without permission of the owner or person entitled to possession, intentionally take or drive away an automobile or motor vehicle that is the property of another or did voluntarily ride in or upon the automobile or motor vehicle with knowledge of the fact that it was unlawfully taken, contrary to RCW 9A.56.075(1).

## III.

On January 15, 2019 at approximately 0950 hours Peter Ballatan's 2001 Toyota Avalon was stolen from his driveway by three individual[s]: an African-

American male in all red clothing, a dark-complected male in dark clothing and wearing a dark hat, and a female in a black sports suit with white stripes on the side.

IV.

[IMC] knew that the Toyota had been stolen, as he was at the scene of the incident when it was stolen.

V.

[IMC] was a passenger in the stolen vehicle because he was identified at the scene where the Avalon was abandoned approximately 4.5 miles from the Ballatan residence no more than 45 minutes after it was stolen. [IMC] reasonably could not have walked from the Ballatan residence to the location where the Avalon was abandoned in 45 minutes. There was no evidence submitted that [IMC] obtained a car ride to the location where the Avalon was abandoned.

VI.

[IMC] was a passenger in the stolen vehicle because he was identified with the group of juvenile suspects who were arrested approximately five blocks away from the location where the Avalon was parked on Golden Given Road East approximately 20 minutes after the car was abandoned by the group.

*Id.* at 64-66.

IMC appeals.

## ANALYSIS

IMC argues that the evidence was insufficient to support the conviction because there was no evidence that he rode in the stolen vehicle or that he assisted others in taking the vehicle.[3] We disagree.

---

[3] IMC's issue statement suggests that IMC is also arguing that there was no evidence that he took or assisted others in taking the car. But because the trial court found only that IMC had ridden in the car while knowing it was stolen, and IMC's argument focuses only on that method of committing the offense, we do not address those arguments.

We review sufficiency of evidence claims for whether, viewing the evidence in the light most favorable to the State, "'any rational trier of fact could have found guilt beyond a reasonable doubt.'" *State v. Frahm*, 193 Wn.2d 590, 595, 444 P.3d 595 (2019) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). A sufficiency of the evidence challenge admits the truth of the State's evidence and all reasonable inferences drawn therefrom. *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017). "[I]nferences based on circumstantial evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007).

To prove the crime of second degree taking of a motor vehicle without permission, the State had to prove that IMC "voluntarily [rode] in or upon the automobile or motor vehicle with knowledge of the fact that the automobile or motor vehicle was unlawfully taken." RCW 9A.56.075(1). Taking the evidence in the light most favorable to the State, the evidence is sufficient to support the trial court's conclusion that IMC had ridden in the stolen car.

The Ballatans both identified IMC as one of the people who was outside their home when the car was stolen, and they observed that IMC was wearing all black and a black puffy coat at that time. They also testified that IMC ran off in the same direction as the car with the other person who had shouted a warning to the people stealing the car.

Then, less than 40 minutes later, and approximately four and a half miles away, Martindale observed the Ballatans' car stop near her house and observed that the car "appeared to be full of occupants." CP at 61. Martindale also observed that there were no other people or vehicles around

and, soon after the car stopped, she observed an African-American male wearing the same clothing IMC had been observed wearing at the Ballatans' house examining the car's flat tire. IMC was also among the juveniles that Martindale had identified as having been at the car. This is strong circumstantial evidence that IMC had been in the car.

IMC is correct that witnesses testified only about how long it would potentially take to walk the four and a half miles between the Ballatans' house and Martindale's house, one testifying that it would take 90 minutes and another testifying that it would take about 120 minutes, and that no evidence was presented regarding how quickly someone could run this distance. But a jury could still reasonably conclude that it was highly unlikely that IMC ran the four and a half miles to where the car was abandoned, reaching that location at exactly the same time as the car. Not only was this a significant distance from the Ballatans' house, but when Martindale first saw the car, it was full of people, and there were no other people or vehicles around. And a short time later, Martindale saw a person wearing the same clothing as IMC standing near the car. It is a reasonable conclusion, based on the evidence, and not mere speculation that IMC had arrived in the car and not on foot.

These facts are sufficient circumstantial evidence to allow a jury to infer that IMC had arrived in the car with the others. And since IMC was present when the car was stolen, a fact that IMC does not dispute, the jury could also conclude that IMC knew the vehicle was unlawfully taken. Thus, the evidence was sufficient to allow the jury to find guilt beyond a reasonable doubt. Accordingly, we affirm the conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

SUTTON, A.C.J.

MAXA, J.