# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58833-1-II |
| Respondent, | |
| v. | |
| VICTOR EVERETT ZURBANO JR., | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, C.J. – Victor Everett Zurbano Jr. appeals his conviction for second degree custodial interference by a parent after he failed to relinquish his son to the child's mother, Samantha Klosowski, following a 24-hour visitation. Zurbano argues that (1) the evidence was insufficient to prove the crime because the State failed to prove that he intentionally denied Klosowski access to the child pursuant to a court-ordered parenting plan; and (2) the trial court erred in giving jury instruction 5, which advised the jury that ignorance of the law is no excuse, because the instruction was not supported by substantial evidence and was therefore a comment on the evidence and because it contradicted our supreme court's decision in *State v. Boss*, 167 Wn.2d 710, 223 P.3d 506 (2009). We hold that the evidence was sufficient to support the conviction and that Zurbano has failed to preserve his jury instruction arguments. Accordingly, we affirm.

FACTS

I. BACKGROUND

Zurbano and Klosowski are the parents of KJZ. A parenting plan provided that Zurbano had 24 hours of visitation with KJZ every week from 5:30 PM Friday to 5:30 PM Saturday. The parenting plan also provided that "[t]he parents should have a neutral, public drop off and pick up site and should refrain from direct contact." Clerk's Papers (CP) at 22. The parenting plan designated the exchange location as the Safeway parking lot in Bremerton. And it further provided that Zurbano's and Klosowski's mothers would exchange the child unless Zurbano and Klosowski agreed to other arrangements.

On July 22, 2022, Zurbano picked up his son in the Safeway parking lot. After Klosowski was late to the arranged pick up the next day, Zurbano retained the child. The child was not returned to Klosowski until the police arrested Zurbano eight days later in the Safeway parking lot.

The State charged Zurbano with first degree custodial interference by a parent under RCW 9A.40.060(2).

II. TRIAL

A. KLOSOWSKI'S TESTIMONY

Klosowski testified about the terms of the parenting plan, which are described above.[1] Klosowski testified that although her mother was the person designated in the parenting plan to exchange the child, Zurbano had "refused to deal with anybody but" Klosowski even though they

---

[1] The State also presented testimony from three law enforcement officers that is not relevant to our analysis.

had not formally agreed to alter the parenting plan. Trial Verbatim Rep. of Proc. (VRP) (Aug. 9, 2023) at 243.

Klosowski further testified that that she had dropped of the child on Friday, July 22, for his visitation with his father. On Saturday, July 23, she was supposed to pick up her son at 5:30 PM in the Safeway parking lot. She was delayed, and she attempted to text Zurbano to inform him that she was running late. But when she arrived at the Safeway parking lot approximately 10 minutes late for the pickup, Zurbano and the child were not there.

Klosowski testified that she then texted Zurbano and told him that she was waiting in the parking lot, but he did not respond. She also attempted to call Zurbano, but she was unable to reach him. She then went to Zurbano's mother's house and knocked on the door but no one responded.

Klosowski then called law enforcement. When the officers arrived at Zurbano's mother's house, they knocked on the door. Once again, no one responded.

Klosowski returned to Zurbano's mother's home sometime within the next two days. When she arrived, she saw Zurbano in the backyard with the child. Law enforcement arrived and tried to contact Zurbano, but he refused to talk to them and took the child inside.

Klosowski denied personally having any contact with Zurbano when she returned to his mother's house. And she asserted that although she continued to try to contact Zurbano by phone and text, he did not respond. Despite her repeated efforts to contact Zurbano, the child was not returned to her until after the police arrested Zurbano in the Safeway parking lot eight days later.

B.   ZURBANO'S TESTIMONY

Zurbano testified that he did not have a good relationship with Klosowski and that they struggled to co-parent. He testified that he was aware of the parenting plan and that he understood

that it provided that he had the right to be with the child weekly between 5:30 PM on Friday to 5:30 PM on Saturday.

Zurbano further testified that on Friday, July 22, his son was dropped off by a man that Zurbano had never met. Zurbano and his son spent the day at Zurbano's mother's house. The next day, he took the child to the Safeway parking lot to return him to his mother. When Klosowski did not arrive after about 15 to 20 minutes, he took the child back to his mother's to feed him.

Zurbano testified that Klosowski did not attempt to notify him that she was running late. Instead, she arrived at his mother's house around 6:00 PM or 6:15 PM and was hostile and emotionally abusive towards him. He asserted that he attempted to arrange to exchange the child with Klosowski at a public location as required by the parenting plan. They were unable to agree about how to exchange the child in a public place, and Klosowski left.

Zurbano further testified that two days later he was home when Klosowski arrived at his mother's front door. Klosowski appeared to be upset. She approached the door and told Zurbano to give her the child. He told her that she was not supposed to be there and that he would meet her in a public place. When they were unable to make arrangements to meet at a public place, Klosowski did not leave and she started to "harass[ ]" him by repeatedly pounding on the door and ringing the doorbell for several minutes. *Id.* at 320.

Zurbano asserted that he was trying to comply with the parenting plan by insisting that the exchange take place in a public location and that he attempted to make this happen two or three times. He denied that it was his intent to permanently keep the child from Klosowski and that he would have agreed to exchange their son if she had agreed to meet in a public place. Zurbano also

4

asserted that he had not violated the parenting plan by keeping the child because Klosowski failed to pick him up at the appointed place and time and would not agree to exchange in a public place.

C.      IGNORANCE OF THE LAW INSTRUCTION

The State proposed a jury instruction that stated, "It is not a defense to a criminal charge that the defendant believed his or her conduct was lawful. Ignorance of the law is no excuse for criminal conduct." CP at 104.

Defense counsel objected, stating,

> I generally have just kind of a standing objection to this particular instruction. . . .
> It's not a standard [pattern instruction]. It's based on case law and the case law [is]
> essentially that ignorance of the law is no excuse unless a statutory element of the
> crime required proof that he or she knew they were violating the law. I find it to be
> a *confusing statute*, and generally, *I don't argue that he didn't know what was going
> on*.

RP (Aug. 9, 2023) at 337 (emphasis added). Defense counsel did not object on the grounds that the instruction was not supported by substantial evidence or that it was a comment on the evidence. The trial court responded that "in this particular case" this instruction was appropriate. *Id.*

D.      CLOSING ARGUMENT AND VERDICT

In closing argument, Zurbano initially noted that neither party did "a particularly good job of" following the parenting plan requirements. *Id.* at 378. He then stated, "So what does that mean? What does that mean? Is everything criminal? Is everything a crime when something's not followed like this, when nobody seems to be able to do it?" *Id.* at 379.

He reiterated this argument at the end of his closing argument, stating,

> So I submit to you that this is simply a case of two people that flat-out just
> can't get along, flat-out can't figure out what should be a relatively simple
> document. Neither of them agree to it. Neither of them follow it. It's just not
> criminal. It's a mess. It's a mess, but it's not a crime.

*Id.* at 382.

Zurbano also focused on the intent to deprive element.[2] He argued that his testimony that he attempted to negotiate an exchange in a public place demonstrated that he did not have intent to deprive Klosowski of her time with the child.

The jury found Zurbano guilty of the lesser charge of second degree custodial interference by a parent under RCW 9A.50.070(2).

Zurbano appeals his conviction.

ANALYSIS

Zurbano argues that his conviction rests on insufficient evidence and that the trial court erred in giving jury instruction 5.

I. SUFFICIENCY OF THE EVIDENCE

Zurbano first argues that the evidence was insufficient to prove second degree custodial interference. He argues that the State failed to prove that it was his intent to deny Klosowski access to the child under a court-ordered parenting plan because it was her act of refusing to abide by the exchange plan in the parenting plan that caused the deprivation. Zurbano contends that his attempts to adhere to the parenting plan by demanding that the exchange occur in a public place demonstrates his lack of intent to deprive Klosowski access to the child in contravention of the parenting plan. We disagree.

The State has the burden of proving every element of a crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). When reviewing a sufficiency of the

---

[2] Zurbano's argument also focused on whether he intended to hold the child for a protracted period of time. But the protracted period of time element was relevant only to the first degree custodial interference charge of which he was not found guilty.

evidence challenge, we ask "whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." *Id.* at 105. When a defendant raises a sufficiency of the evidence challenge, they admit the truth of the State's evidence and all reasonable inferences arising from that evidence. *Id.* at 106. Direct and circumstantial evidence are equally reliable. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017). We will not review the finder of fact's credibility determinations. *Id.* We review sufficiency of the evidence challenges de novo. *State v. Frahm*, 193 Wn.2d 590, 595, 444 P.3d 595 (2019).

To prove second degree custodial interference, the State was required to prove that Zurbano intended to "take[ ], entice[ ], retain[ ], detain[ ], or conceal[ ] the child, with the intent to deny access, from the other parent having the lawful right to time with the child pursuant to a court order making residential provisions for the child." RCW 9A.40.070(2).

Zurbano argues that the evidence established only that he retained the child because Klosowski refused to comply with the parenting plan when she refused to exchange the child in public and not that he intended to deny access to the child to a parent with the lawful right to time with the child under to a court order. But Klosowski's testimony, taken in the light most favorable to the State, is sufficient to establish that Zurbano intended to retain the child with intent to deny Klosowski access despite her lawful right to time with the child pursuant to the parenting plan.

Klosowski testified that after Zurbano was not present when she arrived to exchange the child on July 23, she and law enforcement officers made several unsuccessful attempts to contact Zurbano by phone, text, and in person to exchange the child, and that Zurbano refused to respond and retained the child despite the fact his visitation time had expired. This testimony contradicts Zurbano's testimony that Klosowski refused to arrange to exchange the child in a public location

after the original exchange arrangements had failed. Instead, if, as we must here, this evidence is taken as true, it demonstrates that Zurbano continued to intentionally retain the child and avoid contact with Klosowski that could have resulted in an exchange of the child despite knowing that his visitation time had long expired and the parenting plan required that the child be with Klosowski.

Taken in the light most favorable to the State, a reasonable jury could have found that Zurbano's avoidance of Klosowski demonstrated an intent to retain the child despite the fact the child should have been returned to Klosowski and that the evidence did not demonstrate that Zurbano was merely trying to comply with the exchange requirements set out in the parenting plan. Accordingly, Zurbano's sufficiency of the evidence argument fails.

## II. JURY INSTRUCTION

Zurbano next argues that the trial court erred in giving instruction 5 to the jury. He argues that the evidence did not support this instruction because it did not establish that he was "ignorant of the [parenting] order." Br. of Appellant at 11. As a sub-argument, he argues that because the giving of the instruction was not supported by the evidence, it was a comment on the evidence because it undercut his ability to argue that he believed he was acting in compliance with the parenting plan. He also argues that this instruction was contrary to our supreme court's decision in *Boss*.

But Zurbano acknowledges that at trial he objected to the instruction on the grounds that it was "inapplicable and confusing," not that it was not supported by the evidence, was a comment on the evidence, or contradicted *Boss*. *Id.* at 13. And Zurbano does not address RAP 2.5(a) or make any effort to demonstrate that review of these arguments for the first time on appeal is warranted.

8

No. 58833-1-II

Because Zurbano did not raise the same arguments in the trial court and does not address RAP 2.5(a) or whether the alleged errors were manifest constitutional errors, we decline to address this issue. RAP 2.5(a).

Moreover, we note that Zurbano's theory of the case below was that he acted in compliance with the portion of the parenting plan that directed the parties to exchange the child in a public place. Contrary to his argument on appeal, this was not merely a contention that he acted in compliance with his understanding of what the plan required, but that he acted in compliance with what he believed *the law required.* Thus, the instruction was supported by the evidence.

Because the evidence is sufficient to support the conviction and Zurbano has not preserved his jury instruction arguments, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, C.J.

We concur:

LEE, J.

GLASGOW, J.

9