# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 60510-4-II |
| Respondent, | |
| v. | |
| EDWIN JUAREZ DELRIO, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, A.C.J. — Edwin DelRio[1] appeals his convictions for two counts of attempted rape of a child in the second degree (counts I and II), one count of felony communication with a minor for immoral purposes (count III), and one count of attempted commercial sexual abuse of a minor (count IV). The trial court imposed community custody conditions that prohibit DelRio from consuming alcohol or cannabis (special condition 11) and limit his ability to access the Internet or possess personal electronic devices (special conditions 24, 25, and 26).

DelRio argues that (1) there was insufficient evidence to support his convictions, (2) his attempted rape of a child in the second degree convictions constitute the same criminal conduct, (3) several community custody conditions are unconstitutional, and (4) his sentences for counts III and IV exceed the statutory maximums. The State concedes that DelRio's sentence for count III exceeds the statutory maximum and that special condition 26 is not crime related.

---

[1] When referring to the defendant, we follow the way the defendant spells and formats his name.

We accept the State's concessions. We remand for the trial court to modify special conditions 24 and 25, strike special condition 26, and reduce the term of community custody for count III. We otherwise affirm.

FACTS

I.     OPERATION AND ARREST

Law enforcement officers running a sting operation posted an advertisement on a website where people sell sexual services. The advertisement marketed sexual services from 'Kaitlyn" and "Adi" with photos of two officers that had been digitally modified to make the officers appear to be teenagers. Ex. 15. The advertisement stated that the fictional girls were 19 years old.

A subject at a phone number beginning with (415) texted the phone number that police listed in the advertisement. The (415) number requested a "duo," meaning intercourse with two people, and the police officer manning the advertised phone number responded that a duo would cost $350 per half-hour. Ex. 17. The (415) number then asked the price "for a duo BB," referring to intercourse without a condom, for which the officer quoted a rate of $450. Ex. 17.

After the (415) number requested an address to meet at, the officer asked, "How old [are you?]" Ex. 17. The (415) number responded "34." Ex. 17. The officer then texted, "I might be too young," followed by, "If [you're] cool wit[h] us being 13 . . . let's go." Ex. 17. The (415) number responded, "Send me a pic[ture] of you doing a thumbs up?" before again requesting an address to meet at and then asking if cash was an acceptable form of payment. Ex. 17. When the officer directed the (415) number to a hotel, the (415) number requested a picture of "Adi holding 2 thumbs up" and then asked how it was possible to book a hotel room without being 18, to which the officer responded, "Cash is king." Ex. 17.

The hotel that police directed the (415) number to had a front and back parking lot, with a secured gate in between. When police asked what car the (415) number was driving, it responded, "A blue Honda." Ex. 17. Shortly thereafter, a black Toyota pickup truck entered the front parking lot. The black Toyota then proceeded toward the back parking lot. Within a minute of indicating that it was driving a blue Honda, the (415) number sent a message reading, "There's a gate blocking parking though . . . . Does it automatically open?" Ex. 17. Police responded, "Hit the buzzer," and the Toyota then proceeded through the gate to the back parking lot. Ex. 17. DelRio then got out of the Toyota and entered the hotel.

Police were using two rooms in a short dead-end hallway to conduct the sting operation, directing targets to knock on one room's door and then using the other room to stage for arrests. The two rooms police were using were the only rooms in the hallway.

DelRio knocked on the door of the room police were directing targets to, and officers arrested him. DelRio told officers that he was at the room to pick up a package.

During a search incident to arrest, officers found $450 in cash on DelRio's person. Additionally, officers executed a search warrant on DelRio's truck and found a cell phone. Police sent a message reading "TEST" to the (415) number, but police did not observe whether that message appeared on the phone later found in DelRio's truck. 5 Rep. of Proc. at 485. And police were unable to access or extract any data from the phone found in DelRio's truck or to identify the associated phone number.

The State charged DelRio with two counts of attempted rape of a child in the second degree, one count of felony communication with a minor for immoral purposes, and one count of attempted commercial sexual abuse of a minor. DelRio was 34 years old.

## II.   TRIAL, VERDICT, AND SENTENCING

At trial, witnesses testified consistently with the facts described above. DelRio did not object when the trial court admitted a log of the text messages between the undercover police officer and the (415) number. The jury convicted DelRio of all charges.

At sentencing, the State requested a sentence at the bottom of the standard sentencing range, while DelRio requested an exceptional downward sentence. DelRio also requested a ruling that his convictions all constituted the same criminal conduct, which would have set his offender score at 0 points.

The trial court acknowledged that DelRio had no prior criminal history and had undergone several evaluations that reported no inclination toward predatory behavior or sexual attraction to children. But the trial court ruled that DelRio's crimes had different intents, so they were not the same criminal conduct. As a result, each of DelRio's convictions counted for three points against his other current offenses, so his offender score was over 9 points. Former RCW 9.94A.525(17) (2021); RCW 9.94A.589(1)(a).

The trial court imposed a sentence at the bottom of the standard range of 157.5 months to life for each count of attempted rape of a child in the second degree. The trial court also imposed a sentence of 51 months for the felony communication with a minor for immoral purposes conviction, and a sentence of 81 months for the attempted commercial sexual abuse of a minor conviction. Next, the trial court imposed lifetime community custody for each of the attempted rape of a child in the second degree convictions, and 36 months of community custody for the other two convictions.

The trial court also imposed community custody conditions. Special condition 11 prohibited DelRio from consuming alcohol or cannabis. And the trial court imposed several conditions related to use of the Internet and electronic devices:

> 24 . . . No internet access or use, including email, without prior approval of the supervising [community custody officer (CCO)] and Treatment Provider.
>
> 25 . . . No use of a computer, phone, or computer-related device with access to the Internet or on-line computer service except as necessary for employment purposes (including job searches). The CCO is permitted to make random searches of any computer, phone or computer-related device to which the defendant has access to monitor compliance with this condition.
>
> 26 . . . No possession of any audio or video recording equipment, to include personal electronic devices, such as cell phones, watches, and iPods, with a camera/video recording capability without the prior approval of the supervising CCO and Treatment Provider. The CCO is permitted to make random searches of any computer, phone or computer-related device to which the defendant has access to monitor compliance with this condition.

Clerk's Papers (CP) at 560.

DelRio appeals his convictions and sentence.

ANALYSIS

I.      SUFFICIENCY OF THE EVIDENCE

DelRio argues that there was insufficient evidence to convict him of any of the charges. Specifically, he asserts that the ER 901 criteria for authenticating electronic messages were not met in this case, even though he does not assign error to the trial court's ruling admitting the text messages. DelRio relies on caselaw from Washington and other jurisdictions requiring corroborating evidence about who sent text messages before admitting those messages as evidence under ER 901 and its foreign equivalents.

The State first responds that DelRio did not challenge the admissibility of the text messages at trial. And it emphasizes that the cases DelRio cites addressed scenarios where there were

objections to the authenticity of and foundation for text messages—objections which were not made in the instant case. The State also argues that "ample circumstantial evidence supports the jury's verdict." Br. of Resp't at 26.

To begin, DelRio neither challenged the admissibility of the text messages below nor assigned error to the ruling admitting the text messages. *See* RAP 2.5(a); RAP 10.3(a)(4); *Kellar v. Estate of Kellar*, 172 Wn. App. 562, 579, 291 P.3d 906 (2012) (appellate courts will not review arguments raised for the first time on appeal, or trial court rulings that appellants do not assign error to). Thus, we review only whether there was sufficient evidence to support DelRio's convictions, not whether that evidence was properly admitted.

A defendant challenging the sufficiency of the evidence admits the truth of the State's evidence. *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). Accordingly, we view the evidence in the light most favorable to the State and draw all reasonable inference in the State's favor to "determine whether 'any rational trier of fact could have found guilt beyond a reasonable doubt.'" *State v. Frahm*, 193 Wn.2d 590, 595, 444 P.3d 595 (2019) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). "Circumstantial and direct evidence are to be considered equally reliable." *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017).

DelRio was convicted of two counts of attempted rape of a child in the second degree, one count of felony communication with a minor for immoral purposes, and one count of attempted commercial sexual abuse of a minor.

A person is guilty of an attempt to commit a crime if they intend to commit a specific crime and do "any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1). "Mere preparation to commit a crime is not a substantial step" because the conduct must be "'strongly corroborative of the actor's criminal purpose.'" *State v. Sivins*, 138 Wn. App.

6

52, 63, 155 P.3d 982 (2007) (quoting *State v. Aumick*, 126 Wn.2d 422, 427, 894 P.2d 1325 (1995)). Factual or legal impossibility is not a defense to an attempt crime. RCW 9A.28.020(2).

"A person is guilty of rape of a child in the second degree when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.076(1). A person commits felony communication with a minor for immoral purposes "if the person communicates with a minor or with someone the person believes to be a minor for immoral purposes, including the purchase or sale of commercial sex acts . . . , through the sending of an electronic communication." RCW 9.68A.090(2). And a person commits commercial sexual abuse of a minor if they provide "anything of value to a minor or a third person pursuant to an understanding that in return therefore such minor will engage in sexual conduct with" the defendant, or if they solicit, offer, or request "to engage in sexual conduct with a minor in return for anything of value." RCW 9.68A.100(1)(b), (c).

While there is indeed no direct evidence that DelRio sent the text messages from the (415) number, there is strong circumstantial evidence that he did. For example, police quoted the (415) number a price of $450 for intercourse with two 13-year-old girls, and that exact amount of cash that was found on DelRio's person.[2] DelRio was also the same age, 34, as the age stated by the (415) number. And the (415) number sent texts inquiring about how to get through the gate to the hotel's back parking lot as DelRio's vehicle was at the gate. Moreover, DelRio knocked on the door of the room that police directed the (415) number to, which was in a dead-end hallway entirely reserved for the purposes of the sting operation. And this circumstantial evidence is equally

---

[2] Although on appeal DelRio disputes the exact amount of money found on his person, two different officers testified that $450 was the amount recovered, and a sufficiency of the evidence challenge requires admitting the State's evidence as true. *Drum*, 168 Wn.2d at 35.

reliable as direct evidence because we are reviewing a challenge to the sufficiency of the evidence. *Cardenas-Flores*, 189 Wn.2d at 266.

In sum, taking the State's evidence as true, we can draw a reasonable inference that DelRio was the person sending the text messages from the (415) number. *Drum*, 168 Wn.2d 35; *Frahm*, 193 Wn.2d at 595. From there, a rational trier of fact could have found beyond a reasonable doubt that DelRio arranged the meeting to have intercourse with two 13-year old girls over text and then arriving at the designated hotel room with the agreed-upon amount of cash. By doing so, DelRio took a substantial step toward having sexual intercourse with two 13-year old girls, communicated with a minor for the purpose of purchasing commercial sex acts through electronic communications, and took a substantial step towards soliciting sexual conduct with a minor in return for something of value—specifically, $450. *Frahm*, 193 Wn.2d at 595. Accordingly, we hold that there was sufficient evidence to support each of DelRio's convictions.

## II. SAME CRIMINAL CONDUCT

Next, DelRio argues that his two convictions for attempted rape of a child in the second degree constitute the same criminal conduct. He asks this court to distinguish similar cases where courts have held that multiple counts of attempted rape of a child against fictional sting operation victims were not the same criminal conduct. Instead, DelRio emphasizes that the Washington Supreme Court has not ruled on any such case, and he argues that this court's prior decisions contradict the purpose of the Sentencing Reform Act, chapter 9.94A RCW, because there were not multiple *real* victims.

In general, whenever a person is sentenced for two or more current offenses, all other current convictions are included in the offender score. RCW 9.94A.589(1)(a). However, "if the court enters a finding that some or all of the current offenses encompass the same criminal conduct

8

then those current offenses shall be counted as one crime." *Id*. Offenses are the same criminal conduct if they are "crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." *Id*. "The defendant bears the burden to establish that his convictions amount to the same criminal conduct, and if any element is missing, the sentencing court must count the offenses separately." *State v. Canter*, 17 Wn. App. 2d 728, 741, 487 P.3d 916 (2021). We construe RCW 9.94A.589(1)(a) "'narrowly to disallow most claims that multiple offenses constitute the same criminal act.'" *State v. Graciano*, 176 Wn.2d 531, 540, 295 P.3d 219 (2013) (quoting *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997)). "We review determinations of same criminal conduct for abuse of discretion or misapplication of law." *State v. Stott*, 29 Wn. App. 2d 55, 72, 542 P.3d 1018 (2023).

The Supreme Court has explained that attempt convictions are the result of a defendant's intent "to commit the crime and the fact that had things been as the defendant believed them to be, [they] would have completed the offense." *State v. Luther*, 157 Wn.2d 63, 73, 134 P.3d 205 (2006). Following this reasoning, Division One has held that two counts of attempted child molestation, where the victims were two fictional children, was not just "a crime against the public at large." *Canter*, 17 Wn. App. 2d at 742. "Had the situation been as [the defendant] believed it to be, he would have had sexual contact with an 8-year-old girl and an 11-year-old girl," harming two separate victims. *Id*. In other words, because the defendant "intended to inflict specific injury on two different victims, his crimes do not encompass the same criminal conduct." *Id*.

Here, had the situation been as DelRio believed, he would have victimized two different 13-year-old girls. And crimes against different victims cannot constitute the same criminal conduct. *State v. Lessley*, 118 Wn.2d 773, 777, 827 P.2d 996 (1992). Because DelRio intended to inflict specific injury by raping two different victims, we hold that the trial court did not abuse

its discretion by ruling that DelRio's two convictions for attempted rape of a child in the second degree did not constitute the same criminal conduct. *Stott*, 29 Wn. App. 2d at 72.

III.    COMMUNITY CUSTODY CONDITIONS

DelRio challenges several community custody conditions as unconstitutional or not crime related.

"We review community custody conditions for abuse of discretion." *State v. Johnson*, 197 Wn.2d 740, 744, 487 P.3d 893 (2021). A trial court abuses its discretion if it exercises its discretion on untenable grounds, such as by imposing an unconstitutional community custody condition. *Id*. Trial courts have statutory authority to impose community custody conditions that are crime-related, meaning that the conditions "prohibit[] conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10); *State v. Irwin*, 191 Wn. App. 644, 656, 364 P.3d 830 (2015).

A.    Conditions Regarding Alcohol and Cannabis

DelRio argues that special condition 11, which prohibits him from using alcohol or cannabis, is not crime related.

RCW 9.94A.703(2)(c) provides that, "Unless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [r]efrain from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions." Cannabis is a controlled substance, and an authorization to use medical cannabis is *not* a prescription. RCW 69.50.204(c)(17); RCW 69.51A.010(1)(b). Further, "[a]s part of any term of community custody, the court may order an offender to . . . [r]efrain from possessing or consuming alcohol." RCW 9.94A.703(3)(e).

10

Thus, a trial court *must* prohibit any offender from possessing or consuming cannabis and other controlled substances without a prescription and *may* prohibit the offender from possessing or consuming alcohol. The fact that this condition is not crime related is irrelevant because it is authorized by statute. *See State v. Nelson*, 4 Wn.3d 482, 503, 565 P.3d 906 (2025). This claim fails.

B.      Conditions Regarding Internet Use and Recording Equipment

DelRio argues that special conditions 24, 25, and 26 infringe on his First Amendment rights to the United States Constitution and are not crime-related. Special condition 24 prohibits DelRio from using the Internet, including e-mail, without prior approval from his CCO and treatment provider. Special condition 25 prohibits DelRio from using *any* "computer-related device with access to the Internet or on-line computer service except as necessary for employment purposes (including job searches)." CP at 560. The condition also authorizes DelRio's CCO to randomly search any computer or related device DelRio possesses to monitor compliance. And special condition 26 prohibits DelRio from possessing any audio or video recording equipment without approval from his CCO.

DelRio contends that special condition 24 has been held unconstitutional in other cases because it is susceptible to arbitrary enforcement. He also argues that restrictions on Internet use such as in special condition 25 must be narrowly tailored, with benchmarks to prevent arbitrary enforcement. And he argues that special condition 26 is overbroad and not crime related.

As an initial matter, the State concedes that special condition 26, regarding audio and video recording equipment, is not crime related. There is no evidence that audio or video recording equipment played any role in DelRio's offenses. *See Irwin*, 191 Wn. App. at 656-57. Accordingly, we accept the State's concession and remand for the trial court to strike special condition 26.

11

We next turn to the conditions affecting Internet access. "Restrictions on Internet access have both due process and First Amendment implications." *Johnson*, 197 Wn.2d at 744. "Judges may restrict a convicted defendant's access to the Internet, but those restrictions must be narrowly tailored to the dangers posed by the specific defendant." *Id.* at 745.

The Washington Supreme Court has explained that conditions restricting Internet access to use through filters approved by a CCO are not unconstitutionally overbroad. *Id.* at 746-47. But in another Internet sting operation case, Division Three held that conditions prohibiting *any* computer use or the possession of any Internet-capable device without permission from a CCO and treatment provider were "unnecessarily broad" in violation of the First Amendment. *State v. Geyer*, 19 Wn. App. 2d 321, 330, 496 P.3d 322 (2021). Division Three remanded with instructions to modify the conditions, and suggested that "use of a filter, tailored to [the defendant's] risk to the community, would be a sufficiently narrow way to fulfill the State's goals." *Id.* (internal footnote omitted).

Special conditions 24 and 25 broadly prohibit DelRio from accessing the Internet without CCO permission, with a limited exception for "employment purposes." CP at 560. Although slightly narrower than the conditions at issue in *Geyer*, these conditions still require preapproval for almost every possible action on a computer or the Internet. While DelRio did use the Internet to commit his offenses, these conditions are unnecessarily broad. *See Geyer*, 19 Wn. Ap. 2d at 330. Accordingly, we remand for the trial court to modify special conditions 24 and 25 in a manner narrowly tailored to DelRio's risk to the community, such as allowing Internet use through a CCO-approved filter. *See Geyer*, 19 Wn. App. 2d at 330. And, as discussed above, the trial court should strike condition 26 on remand.

IV.    MAXIMUM SENTENCES

Finally, DelRio argues that his sentences for counts III and IV exceed the statutory maximum. The State concedes that the sentence for count III (communication with a minor for immoral purposes) exceeds the statutory maximum, so we should remand for the trial court to reduce the community custody term for that count to nine months. The State also explains that the trial court has already corrected the sentence for count IV (attempted commercial sexual abuse of a minor).

Communication with a minor for immoral purposes and attempted commercial sexual abuse of a minor are both class C felonies. RCW 9.68A.090(2); RCW 9.68A.100(2); RCW 9A.28.020(3)(c). Thus, the maximum sentence for those offenses is 60 months. RCW 9A.20.021(1)(c). Next, RCW 9.94A.701(1) requires courts to impose 36 months of community custody for sex offenses. The statute also provides: "The term of community custody specified by this section shall be reduced by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime as provided in RCW 9A.20.021." RCW 9.94A.701(10).

Here, the trial court imposed a sentence of 51 months of confinement for count III, communication with a minor for immoral purposes, and 81 months for count IV, attempted commercial sexual abuse of a minor. The trial court also imposed 36 months of community custody for each count. Thus, the total sentence for count III was 87 months and the total sentence for count IV was 117 months, both in excess of the statutory maximum. Several months later, the trial court entered an order correcting the sentence on count IV to 60 months of confinement and striking the community custody for that count. This order did not affect the sentence for count III.

The total sentence for count III clearly exceeds the statutory maximum. We accept the State's concession and remand for the trial court to reduce the term of community custody for count III to nine months. RCW 9.94A.701(10). We need not address the sentence for count IV because the trial court has already reduced the sentence for that count to the statutory maximum.

CONCLUSION

We remand for the trial court to modify special community custody conditions 24 and 25, strike special condition 26, and reduce the term of community custody for count III to nine months. We otherwise affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, A.C.J.

We concur:

_____
Maxa, J.

_____
Price, J.